## BAUDUC vs. HIS CREDITORS.

4L 247
50 590

APPEAL FROM THE COURT OF THE FIRST DISTRICT.

A mortgage may be given and received as security for endorsements previously made.

The absolute nullity of contracts made by a debtor as fraudulent towards his creditors, and such as our insolvent laws declare to be void, are those contracts alone which are made within the three months immediately preceding his actual failure and surrender of property. As to all others, in order to avoid them, it must be shown, that the debtor was in insolvent circum. stances when he executed them, and that the persons who claim the benefit of such contracts knew him to be insolvent at the time of contracting.

In this case, Porter, J., dissenting, the judges delivered their opinions *seriatim*.

Eastern Dis.
July, 1832.

Porter, J.:

BAUDUC
vs.
his creditors

I agree with my brethren in this case, on one of the points made by the appellants. I think a mortgage may be given to secure previous, as well as prospective endorsements. The objection rests principally on the expressions used in the 3259th article of our code; and it is contended, under the maxim *expressio unius est exclusio alterius*, that because it is there said mortgages may be given by way of security for endorsements which another promises to make, they cannot be given for those already made. I think this construction allows to the argument, *contrario sensu*, a greater weight than it is entitled to. The rule relied on is certainly a sound one, and in many cases leads to a correct understanding of legislative intention. But it is not unbending and inflexible in its application; and when accompanied with other legislation on the same subject matter, the whole is to be taken together. In the present instance, the 3259th article, according to my judgement, should be considered rather as an exception to a general rule, than the enunciation of a principle applicable to particular cases, from which an inference can be drawn, that it was not intended to apply to any other. The 3258th article provides, that a mortgage may be stipulated for the fulfilment of any obligation, and the 3259th declares, that a mortgage may be given for an obligation which has not risen into existence, as that of an endorsement promised. An endorsement already given, creates an obligation which brings the parties completely within the 3258th article; and I think it would be a forced construction to say, that because the promise to endorse is given as an example of the cases where a mortgage may be granted, although the obligation has not yet risen into existence, that it was contemplated to take away the authority conferred by the previous article, to stipulate a mortgage where the obligation already existed. See *Note of Paillette, on the* 890*th article of the Napoleon Code.*

It was contended, the mortgages were void as to the other creditors, because they were given within three months of the

time at which the insolvent was incapable of paying his
debts, although more than three months had elapsed from the
time the lien was given until the bilan was filed.    This period
of time has, I believe, been generally understood in this state,
to relate to that which intervenes between the passing of the
act and the declaration of insolvency.    At least, such has
been my impression.    But the argument in this case has con-
siderably shaken my confidence in the correctness of this im-
pression.    As, however, the opinion I have formed on another
part of the case does not require an opinion on this branch
of it, I have deemed it proper to postpone coming to a posi-
tive conclusion, until the rights of parties before the court
require me to do so.

I differ with the majority of the court, in relation to the
knowledge of the opposing creditors, as to the insolvency of
Bauduc, at the time they took the mortgage.    It is true, we
have no positive evidence of that knowledge; and in ninety-
nine cases out of a hundred it cannot be obtained.    But it
is precisely for the reason that direct proof cannot ever, or
very rarely be had, that greater weight is due to circum-
stances from which the knowledge may be inferred.    A claim of
privilege, which sweeps away the whole estate, and leaves
nothing, or scarcely nothing, for the other creditors, cannot
be too cautiously scrutinized.    In the present instance it is
seen, the opposing creditors had endorsed for the insolvent,
some time before the mortgage was taken, and without secu-
rity.    That immediately previous to their obtaining it, they
sought to be relieved therefrom; for their debtor endeavored
to procure another and different endorser.    That he suc-
ceeded in doing so, and that he gave to the individual a
mortgage to secure him.    The credit of this person not being
found sufficient to enable the insolvent to negociate his paper,
the act was rescinded, and a mortgage was then given to the
appellees.    In this act, they obtained a declaration from the
insolvent, that they had advanced him thirty thousand dollars
in cash, which was contrary to the real state of the case.
This act, on the advice of their counsel, was rescinded, and

32

EASTERN DIS. another executed, in which it was declared the mortgage was
July, 1832.
              given to secure their endorsements.    In this last instrument
BAUDUC        it was provided, that in consequence of the state of the mort-
vs.
HIS CREDITORS gager's affairs, it would be necessary for him to renew the
notes, or a part of them.    Some of these notes fell due in a
shorter time than three months from the date of the act of
mortgage; and within three months and nine days from its
execution, the insolvent filed his bilan.    No evidence is given
of any cause which would not have made such a measure just
as necessary three months earlier; for it is proved beyond
doubt, he was actually insolvent at the time he gave the
mortgage.

From these facts, I have found it impossible to divest my
mind of the conclusion, that the appellees knew the situation
of Bauduc's affairs at the time they took the security.    Al-
though it is shown some people considered him solvent at
that period, it is proved others thought differently.    His
credit was greatly impaired at one of the banks.    His en-
dorsers, we must suppose, took particular pains to be informed
of his true condition.    Their alarm is shown by their attempt
to get rid of their endorsements; and still more suspiciously,
by their taking a mortgage, in the first instance, for cash
advanced by them; by their subsequently consulting counsel,
and by the change made in the act; and lastly, by their
providing for a renewal of notes which would have fallen due
before three months expired.

I am aware all these facts admit of an explanation con-
sistent with a want of knowledge, on their part, of his insol-
vency, but they have produced a different impression on my
mind.

MARTIN, J.:

The only question of law which this case presents, is
whether a mortgage may be legally taken to secure against
endorsements theretofore given.    The negative has found
support in the article 3259 of the Louisiana Code, which
recognises the legality of mortgages to secure against the

consequences of endorsements thereafter to be given. The
maxim *inclusio unius est exclusio alterius*, is invoked; but does

not appear to me applicable. That a mortgage may be given to
secure the payment of an existing debt, is a proposition which
is countenanced by the experience of every day among us.
Whether a debt intended to be created, was a question that
might have admitted some doubt, which it was the object of
the legislature to remove, by the express declaration in the
article cited.

This difficulty, if it be one, being removed, the case turns
on a mere question of fact, viz. whether, at the time the
mortgage was taken, the mortgagee knew the mortgager was
unable to pay all his debts. That every creditor who re-
quires a mortgage from his debtor, conceives there is some
danger, that the property of the latter may prove in-
sufficient to satisfy all his creditors, cannot be doubted; for
if no danger was apprehended, the mortgage would be
unnecessary. The law avoids those mortgages which are
taken by a creditor, who knows at the time he takes the
mortgage, that his debtor is unable to pay all his debts, and
thereby gives him an unwarrantable advantage over the rest
of the creditors.

The proof of this knowledge, I admit, can in very few cases,
indeed, be directly administered. It most generally results
from a corroboration of circumstances. In the present case,
the circumstances presented to us, are such, it is admitted,
as well may lead the mind to either of the opposite con-
clusions. It is the duty of the party who supports a pro-
position to render it certain. It does not suffice that he
makes it probable, for thus the court must decide *in favorim
solutiones.*

When we doubt on a question of fact, we generally adopt
the decision of the first judge. He has better means of
information than us. He sees and hears the witness. He
may require an explanation of such parts of their testimony
as appear to him obscure.

On these considerations, finding myself unable to come to
the conclusion, that the efforts the party made to secure

himself, evince his knowledge of the actual insolvency of the debtor, I think it safe to vote for the affirmance of the judgement.

MATHEWS, J.:

In filing a tableau of distribution of the insolvent's estate, the present opposing creditors were refused a place thereon by the syndics, as privileged, by a mortgage executed in their favor by the debtor, about three and a half months before his failure and cesssion of property. In consequence of this refusal, they made opposition to the homologation of said tableau, which was sustained by the court below, and they were ordered to be placed thereon as mortgagee creditors, and paid accordingly. From the judgement thus rendered, the syndics appealed.

In support of their claim, the appellees produce in evidence a notarial act dated on the 17th of April, 1830, by which it appears that the insolvent mortgaged to them certain real estate and slaves therein described, to secure them for endorsements which they had previously made on his notes, and for his benefit. The correctness of the judgement appealed from depends on the legality and validity of this act. The appellants contend: 1. That our laws do not authorize a mortgage to be given by a debtor to secure endorsers against any eventual responsibility and loss which they may incur in consequence of the obligations created by the implied contract of endorsement, when the hypothecation has relation to notes previously endorsed. 2. That the act of mortgage in the present case is void, as having been made at a time when the debtor was insolvent; and his insolvency was known to these creditors, who thereby attempted to obtain an unjust preference over other creditors, to the injury and in fraud of the rights of the latter. There are several bills of exceptions found on the record relating to the regularity of the proceedings in the court below, and to the admissibility of testimony, which, in consequence of my conclusions on the facts and law of the case as fairly exhibited, need not be noticed.

EASTERN DIS.
July, 1832.

BAUDUC
vs.
HIS CREDITORS

If either of the two positions stated against the validity of the act of hypothecation under which the appellees claim a preference over the chirographic creditors, be entirely true, they must fail in their claim.

In support of the first, reliance is had on the article 3259 of the Louisiana Code, which declares that "a mortgage may be given for an obligation which has not risen into existence, as when a man grants a mortgage by way of security for endorsements which another promises to make for him." The latter clause of this article is adduced only as an example illustrative of the general principle laid down in its commencement. The whole taken together cannot be considered as establishing an exclusion of the right to give and receive a mortgage as security for endorsements previously made. The general principle as declared, shows that a mortgage may be taken to secure a conditional creditor against eventual loss. The article immediately preceding states that a mortgage may be stipulated for the fulfilment of any obligation whatever, &c.

A mortgage may be given and received as security for endorsements previously made.

The maker of a note who obtains an endorser on it for the sole benefit of the former, is clearly bound to indemnify the latter in the event of his being obliged to pay the debt contracted by it, and to secure this fulfilment of the obligation of the maker to indemnify, he may mortgage his property, whether the endorsement be made previous or subsequent to the act of mortgage, so long as the obligation remains unsatisfied.

That a debtor cannot legally make any change in the situation of his property (otherwise than in the ordinary course of business) at a time when he is in a state of insolvency, by granting privileges and preferences to some of his creditors over the rest, is a principle well established in our jurisprudence, and has prevailed ever since the decision of the case of *Brown* vs. *Kenner et al.*, 3 *Martin*, 270. But to invalidate any instrument by which such preferences are attempted to be given, it is necessary to show that the creditor knew at the time of obtaining the privilege accorded to him, that his

Eastern Dis.
July, 1832.

BAUDUC
vs.
HIS CREDITORS

debtor was in insolvent circumstances. *L. C. arts.* 1979–80. These textual provisions of the code are in accordance with the principles of our laws as they previously existed, and are laid down in several decisions of the Supreme Court rendered before the promulgation of the code. According to the 3323d article, "mortgages given and inscribed within three months previous to the failure of a debtor, shall be declared null, as presumed to be given in fraud of other creditors," &c. In the present instance, the failure of the debtor was not made known by the cession of his property, until about three months and fourteen days after giving the mortgage in question; consequently this article of the code is not applicable to the situation. of the parties to the contract now attacked as fraudulent.

To establish the entire truth of the second proposition relied on by the appellants, the proof of two important facts is required. First, that Bauduc, the debtor, was in insolvent circumstances; and second, that the appellees knew that his whole property was not, at the time they obtained the mortgage, sufficient to pay all his debts. *L. Code, art.* 1980.

From the 17th of April, 1830, to the 30th of July of that year, when the debtor made a cession of his goods, no material change seems to have taken place in the state of his property; and if we are to judge by the amount produced from the sale made by the syndics, it was clearly insufficient to pay all the debts due by the debtor at the former period. If, instead of looking to the amount produced by the sale which was made on terms calculated to procure a just price, we take into consideration a fair appraised value of the estate ceded, the same conclusion would follow, calculating according to the value of some part of said estate as proven, &c. The fact of insolvency of the debtor in the month of April, at the time when he gave the mortgage to the appellees, cannot, therefore, be doubted. But whether they knew it or not, is very questionable. In proof of this fact, no positive evidence is produced. Its establishment depends altogether on presumptions; and in support of these, reliance is had on a variety

of occurrences, and the testimony of some of the witnesses. 1. On an attempt made to raise money by the endorsement of one Laville, for which the endorser was to have been secured by a mortgage on the same property which was afterwards hypothecated to the appellees. 2. On an acknowledgement made by the mortgagor in the act of hypothecation to them, that the situation of his affairs would probably require a renewal of the note endorsed. 3. On the testimony of Cavalier, president of the Bank of Orleans, and of Jos· Abat, a money broker.

The circumstances in relation to the manner in which the mortgage was made, and the testimony of these witnesses, might fairly have raised a suspicion in the mind of a person acquainted with these facts, as to the pecuniary standing of the debtor; a suspicion of his solvency. But suspicion and doubt are things different from knowledge and belief.

The inadequacy of Laville's endorsement on Bauduc's notes, to procure money, appears rather to have been a consequence of the want of credit in the endorser than in the maker, and a person quite solvent as respects the value of his property, may often require the renewal of accommodation notes. Neither of the two witnesses whose testimony is referred to as showing the insolvency of the debtor (with all the astuteness which may well be attributed to bankers and money brokers on subjects of this kind), were able to declare that they believed the debtor to be insolvent at the time he gave the mortgage to the opposing creditors, although, from their evidence it may be inferred that his credit was not so good at that time as it had previously been. If to this want of positive proof on the part of the appellants, be added the testimony of many witnesses, that the debtor was generally reputed to be the proprietor and possessor of a large estate, more than equal to the payment of his debts, until the contrary was shown by his actual failure, it is believed that the presumptions in support of the fact, that the appellees knew him to be insolvent at the time they took the security by mortgage, are not sufficiently strong to

produce absolute conviction on the mind of any disinterested person that they were conusant of this fact.

There is no probability that it was communicated to them by the debtor, because men in desperate pecuniary circumstances are generally unwilling to admit the fact to themselves, and even when convinced of it, they would be the last to communicate it to others.

General reputation at the time the mortgage was made, seems to have been in favor of the debtor's solvency, and the testimony of the case does not in my opinion, show any particular facts calculated to produce full and complete belief that the appellees knew him to be otherwise than solvent at that time.

Whatever may be the doctrine established by decisions of the tribunals in France in relation to the time of failure, as recognised by the laws of that country, whether it be the period of the actual cession of property by an insolvent, or that of his inability to meet his engagements as evidenced by the protest of his notes, &c., I consider it useless to inquire, believing, as I do, that the absolute nullity of contracts made by a debtor, as fraudulent towards his creditors, and such as our insolvent laws declare to be void, are those contracts alone which are made within the three months immediately preceding his actual failure and surrender of property. As to all others, in order to avoid them, it must be shown that the debtor was in insolvent circumstances when he executed them, and that the persons who claim the benefit of such contracts, knew him to be insolvent at the time of contracting.

It is ordered, by a majority of the court, that the judgement of the District Court be affirmed, with costs.

*Mazureau* and *Morphy*, for appellants.
*Moreau* and *Canon*, for appellees.

The absolute nullity of contracts made by a debtor as fraudulent towards his creditors, and such as our insolvent laws declare to be void, are those contracts alone which are made within the three months immediately preceding his actual failure and surrender of property. As to all others in order to avoid them it must be shown that the debtor was in insolvent circumstances when he executed them, and that the persons who claim the benefit of such contracts knew him to be insolvent at the time of contracting.